IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LEONARDO REED,<br><br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-3994 (JBS-JS)<br><br>**OPINION** |

APPEARANCES:

LEONARDO REED, Plaintiff Pro Se
Register No. #10152-084
FCI FORT DIX
Inmate Mail/Parcels
EAST:  P.O. Box 2000
Fort Dix, NJ  08640

CRAIG CARPENITO
United States Attorney
    By:  J. Andrew Ruymann
        Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
402 East State Street
Suite 430
Trenton, NJ 08608
    Attorneys for Defendant United States of America

**SIMANDLE, District Judge:**

## I. INTRODUCTION

Before the Court is Defendant United States of America's motion for summary judgment on Plaintiff Leonardo Reed's Federal Tort Claims Act ("FTCA") complaint. Motion, Docket Entry 44. Plaintiff Leonardo Reed has not opposed the motion. The motion

is being decided on the papers pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the motion is granted.

Plaintiff's complaint stems from an injury he received at FCI Fort Dix, a federal correctional facility maintained by the Bureau of Prisons ("BOP"), when he cut himself on razor wire located alongside of an interior fence while retrieving a softball during recreation time. The principal issues to be decided are whether the Court lacks jurisdiction over the complaint because (1) Plaintiff failed to include in his FTCA notice of claim form an allegation that BOP staff negligently ordered or tasked him to retrieve the softball from within the wire, and (2) the decision to place razor wire alongside of the interior fence falls within the discretionary function exception to the FTCA's waiver of sovereign immunity.

The Court finds that Plaintiff has not made an allegation that BOP staff negligently ordered or tasked him to retrieve the softball (either in his administrative tort claim or in this case), and that the discretionary function exception applies to his allegation that federal officials negligently placed the razor wire that caused his injury. The Court therefore lacks jurisdiction over the FTCA complaint, and the Court will grant the summary judgment motion for the reasons stated below.

2

II. BACKGROUND

A. Procedural History

Plaintiff filed this complaint on July 1, 2016. The Court granted his *in forma pauperis* application on July 11, 2016. Docket Entry 2. On July 18, 2016, the Court conducted a preliminary screening based upon the allegations in the Complaint and permitted the FTCA claims to proceed against the United States. Docket Entry 3.

The United States moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), Motion to Dismiss, Docket Entry 9, which the Court denied on June 26, 2017. Docket Entry 13.

On February 15, 2018, the United States moved for summary judgment. Plaintiff did not file opposition to the motion.

B. Statement of Facts

*1. Allegations in Pleadings*

Plaintiff alleges the BOP was negligent in placing razor wire in various locations throughout the facility in areas that are accessible to inmates, including but not limited to the recreation area on the "wrong side of the fences." Complaint ¶¶ 12-13. Plaintiff alleges that several inmates have received injuries due to the placement of the wire, which "generally reaches to just above knee level with some areas reaching face level." *Id.* ¶¶ 15-16.

According to the complaint, Plaintiff was playing softball in the Fort Dix recreation yard on June 22, 2015 when a ball fell into an area "within the razor wire." *Id.* ¶ 27. The complaint asserted that the softball commonly fell within the wires. *Id.* ¶ 24. Plaintiff further alleged that "[i]nmates are tasked with retrieving the balls from within the razor wire[,]" and that "[s]everal inmates have previously been cut while retrieving the ball from within the razor wire." *Id.* ¶¶ 25-26.

Plaintiff alleges the razor wire cut into his left wrist when he retrieved a softball on June 22, 2015. *Id.* ¶¶ 28-29. The cut caused heavy blood loss, and "medical staff feared that an artery may have been cut." *Id.* ¶¶ 29, 32. Plaintiff was left with a "½ inch keloid type scar." *Id.* ¶ 33.

Plaintiff alleges his injury was caused by the negligence of BOP staff in placing razor wire around Fort Dix.

*2. Defendant's Statement of Material Facts*

According to the United States, Plaintiff warming up for the softball game on June 22, 2015 between 5:30 p.m. and 6:30 p.m. with his team's catcher. Defendant's Statement of Material Facts ("DSOF"), Docket Entry 23-2 ¶ 2. BOP Recreation Specialist Dekovin McCaulley was supervising the game. *Id.* ¶ 3. During the warm-up, a ball bounced off Plaintiff's glove and rolled into the razor wire located at the base of a fence between the soccer

field and the softball field. *Id.* ¶ 4. *See also* Docket Entry 23-6 at 6-9.

Upon seeing the ball within the razor wire, Plaintiff asked McCaulley if he could retrieve the ball; McCaulley told Plaintiff to "'go ahead.'" DSOF ¶ 6. According to the United States, Plaintiff testified at his deposition that other balls were available on the field as other inmates were using them to warm up before the game. He also testified that "'the most logical thing to do' would have been to use a softball bat" to retrieve the ball from the wire. *Id.* (quoting Deposition Transcript, Docket Entry 23-4 18-22, 39, 65-66). Plaintiff stated at his deposition that McCaulley did not order him to retrieve the ball. *Id.* Plaintiff decided to use his bare hand to retrieve the ball on his own. *Id.* ¶ 10. Plaintiff was cut by the wire and went to the medical unit for treatment. *Id.* ¶ 12. BOP medical staff cleaned the wound and gave Plaintiff a Band-Aid. *Id.*

On September 28, 2015, Plaintiff submitted an administrative tort claim to the BOP under the FTCA. *Id.* ¶ 23. *See also* Docket Entry 1-3. Plaintiff argued in his administrative claim that BOP officials were negligent in their placement of razor wire around Fort Dix, not that BOP officials negligently "tasked or ordered" him to retrieve the ball. *Id.* ¶

15. The BOP denied Plaintiff's administrative claim on March 25, 2016. *Id.* ¶ 17.

The United States argues razor wire was placed on the ground at the base of the interior fences due to security concerns at Fort Dix. *Id.* ¶ 26. According to Michael Bond, Facilities Manager at Fort Dix, Fort Dix's perimeter fences are near publicly accessible areas. *Id.* Fort Dix also has interior fences, known as "slow-down fences," within the perimeter fences. *Id.* It is one of these "slow-down fences" that runs between the softball and soccer fields and upon which Plaintiff was injured. *See* Docket Entry 23-6 at 6-9.

Mr. Bond states that "[p]rior to the installation of the razor wire at the base of the interior fences, inmates were cutting holes in the interior fences to get closer to the perimeter fences so that they could retrieve contraband thrown or propelled over the perimeter fencing by outside accomplices." DSOF ¶ 26. Accordingly, Mr. Bond consulted in 2011 with Donna Zickefoose, former Fort Dix Warden; Hal Sutherland, former Associate Warden; and Janel Fitzgerald, former Captain, to determine steps to combat the increasing amount of contraband, including but not limited to cellphones and drugs, in Fort Dix. *Id.* ¶¶ 26-27. They concluded that placing razor wire on the ground of the interior fences would deter inmates from cutting the fences and make it more difficult for inmates to obtain

contraband from the area between the interior and perimeter fences. *Id.* ¶ 27.

The parties involved in making the determination to place razor wire on the inside of the interior fences determined razor wire was a cost-effective way to combat the contraband problem and that the benefits to institutional security and control outweighed the possible risks of the placement of razor wire. *Id.* ¶ 31. No federal statute, regulation, or directive prohibited placing razor wire on the interior fences in 2011. *Id.* ¶ 28. The razor wire was installed on all interior fences on Fort Dix's East and West Compounds between the end of 2011 and Spring 2013. *Id.* ¶ 33. "The height of the razor wire placed on the ground varies from location to location and ranges from about 12 inches to about 5 feet in height." *Id.* ¶ 32.

**III. STANDARD OF REVIEW**

Where, as in the instant case, a summary judgment motion is unopposed, Rule 56(e)(3) still requires the Court to satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. *See also Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (interpreting prior version of Rule 56). Federal Rule of Civil Procedure 56(a) generally provides that the "court shall grant summary judgment if the movant shows that there is no

7

genuine dispute as to any material fact" such that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A "genuine" dispute of "material" fact exists where a reasonable fact finder's review of the evidence could result in "a verdict for the non-moving party" or where such fact might otherwise affect the disposition of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts, however, fail to preclude the entry of summary judgment. *Id.* Conclusory, self-serving submissions cannot alone withstand a motion for summary judgment. *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (internal citations omitted). Further, in an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion. *See* L. Civ. R. 56.1 (providing that "any material fact not disputed shall be deemed undisputed for the purposes of the summary judgment motion").

Accordingly, where a properly filed and supported summary judgment motion is unopposed, it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld, although the Court has

discretion to do so if unsatisfied that the law and facts point to judgment as a matter of law.

**IV. ANALYSIS**

"As the Supreme Court has stated, '[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *CNA v. United States*, 535 F.3d 132, 140–41 (3d Cir. 2008), *as amended* (Sept. 29, 2008) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (alteration in original). The FTCA acts as a limited waiver of that immunity, "and permits suits against the United States for torts committed by 'any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (quoting 28 U.S.C. § 1346(b)(1)).[1]

---

[1] If the Court had jurisdiction over the claim, New Jersey substantive law would govern. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994). Under New Jersey law, "[t]he fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014).

9

The United States moves for summary judgment on two issues impacting this Court's jurisdiction over the FTCA claim: whether Plaintiff exhausted his administrative remedies and whether the discretionary function exception applies. As the Court finds in favor of the United States on both questions as a matter of law, the Court lacks jurisdiction over the complaint.[2]

**A. Administrative Remedies**

Before filing a suit in federal court, a plaintiff suing under the FTCA must present the offending agency, in this case the BOP, with notice of the claim, including a "sum certain" demand for monetary damages. *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457 (3d Cir. 2010). "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States's consent to be sued, they are jurisdictional." *Id.* (citing *United States v. Sherwood*, 312 U.S. 584, 587 (1941)). These requirements cannot be waived. *Id.* (citing *Bialowas v. United States*, 443 F.2d 1047, 1049 (3d Cir. 1971)).

The United States argues Plaintiff failed to comply with the notice provision of the FTCA because his notice of claim form did not reference any negligence on the part of BOP

---

[2] The Court does not reach the United States' proximate cause argument because the Court lacks jurisdiction over the complaint.

employees for their alleged "ordering or tasking" Plaintiff to retrieve the ball from the razor wire. Thus, according to the United States, the Court lacks jurisdiction over the complaint to the extent it raises negligence claims based on those alleged actions.

The Court does not read the complaint as raising negligence claims based on any alleged "ordering or tasking" by BOP officials even under the liberal standard it is required to provide to pro se plaintiffs. Plaintiff clearly articulated in his complaint that he believed "BOP staff . . . breached the duty of care owed to [him] to provide him with safekeeping, care and protection, by negligently placing razor wire on the floor where he can be, and was, harmed by it." Complaint ¶ 34. The alleged "order" or "task" may have impacted whether Plaintiff "voluntarily" retrieved the ball, but the Court does not interpret the complaint as raising the alleged "order" or "task" as a separate claim of negligence.

Regardless, to the extent the complaint could be construed as raising that theory of negligence the Court lacks jurisdiction over it because Plaintiff did not present it to the BOP in his notice of tort claim. In the "Basis of Claim" section of the form, Plaintiff wrote that "the West Side Fort Dix institution has improperly and negligently placed razor wire throughout the institution in areas accessible to inmates . . .

11

." FTCA Claim Form, Docket Entry 1-3 at 2. "The razor wire has simply been negligently placed on the wrong side of the fences and generally reaches to knee level with several areas reaching face level." *Id.* He does not assert BOP staff directed him to retrieve the ball. *Id.* "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a), . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1011–12 (7th Cir. 1991); *accord Roma v. United States*, 344 F.3d 352, 362 (3d Cir. 2003).

Because Plaintiff did not include any allegation that BOP staff were negligent for "ordering" or "tasking" him with retrieving the softball in his notice of claim form, the Court lacks jurisdiction over any negligence claim against the United States based on that alleged order or task.

**B. Discretionary Function Exception**

The United States argues the Court lacks jurisdiction over Plaintiff's claim regarding the placement of the razor wire because the placement of razor wire within a prison facility is a discretionary function. Under the FTCA, discretionary functions are excluded from the waiver of sovereign immunity:

> The provisions of this chapter and section 1346(b) of this title shall not apply to — Any claim based upon an act or omission of an employee of the Government,

>     exercising due care, in the execution of a statute or
>     regulation, whether or not such statute or regulation be
>     valid, or based upon the exercise or performance or the
>     failure to exercise or perform a discretionary function
>     or duty on the part of a federal agency or an employee
>     of the Government, whether or not the discretion
>     involved be abused.

28 U.S.C. § 2680(a). The exception "immunizes from second-guessing 'legislative and administrative decisions grounded in social, economic, and political policy.'" *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012) (quoting *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997)). "Although a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity . . ., the Government has the burden of proving the applicability of the discretionary function exception." *Id.* at 333 (citing *Merando v. United States*, 517 F.3d 160, 164 (3d Cir 2008)).

First, the Court must identify the challenged conduct. *Merando*, 517 F.3d at 165. From the uncontested record before the Court, there is no question that the challenged conduct is the decision of BOP employees to place razor wires on the inside of the interior fences. The complaint alleges that "Reed suffered a stabbing wound, blood loss and a permanent scar due to BOP employee negligence in placing razor wire on the floor in a recreation area, in breach of the BOP duty of care owed to

13

Reed." Complaint ¶ 9. Plaintiff's FTCA notice of claim form states as the basis of his claim:

> the West Side Fort Dix institution has improperly and negligently placed razor wire throughout the institution in areas accessible to inmates where they can be harmed by it, including by Commissary, R&D, Records, Food Service, Facilities and recreation areas. The razor wire has simply been negligently placed on the wrong side of the fences and generally reaches to knee level with several areas reaching face level.

FTCA Claim Form, Docket Entry 1-3 at 2. Furthermore, Plaintiff testified during his deposition that he brought this lawsuit because he felt "the wire shouldn't be there at all . . . ." Deposition Transcript 41:23-24. It is clear that the sole conduct challenged by Plaintiff is the decision to place razor wire in areas of Fort Dix that allegedly pose dangers to inmates.

Having identified the challenged conduct, the Court must now conduct a two-step inquiry to determine whether the discretionary function exception applies. *S.R.P.,* 676 F.3d at 333. In order to qualify for the discretionary function exception, the challenged conduct must be "discretionary." "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive." *Berkovitz v. United States,* 486 U.S. 531, 536 (1988).

14

"[T]he duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042 . . . ." *United States v. Muniz*, 374 U.S. 150, 164–65 (1963). Under that statute:

> The Bureau of Prisons, under the direction of the Attorney General, shall —
>
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
>
> (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
>
> (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States

18 U.S.C. § 4042(a)(1)-(3). "As noted by the Eleventh Circuit, these provisions 'do not mandate a specific, non-discretionary course of conduct,' but rather leave the BOP 'ample room for judgment.'" *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (quoting *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998)). *See also Rodriguez v. United States*, 695 F. App'x 669, 673 & n.4 (3d Cir. 2017) (noting that "it appears that every Court of Appeals to have addressed the issue precedentially has reached the same conclusion" and citing cases). The specific placement of razor wire within Fort Dix was not mandated by statute, but required the BOP to exercise an "element of judgment or choice." *Berkovitz*, 486 U.S. at 536. *But*

15

see *Gray v. United States*, 486 F. App'x 975 (3d Cir. 2012) (holding inmate's FTCA claim not barred by discretionary function exception due to prison policy requiring officers to collect razors at the end of shower time). The first part of the inquiry is satisfied.

Next, the Court must consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. "Only those decisions 'susceptible to policy analysis' are protected by the exception." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 336 (3d Cir. 2012) (quoting *United States v. Gaubert*, 499 U.S. 315, 325 (1991)). "In other words, there must be a 'rational nexus' between the Government's decision and 'social, economic, and political concerns.'" *Id.* (quoting *Cestonaro v. United States*, 211 F.3d 749, 759 (3d Cir. 2000)).

The Supreme Court has previously stated that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources . . . ." *Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (internal citations and quotation marks omitted). The United States has submitted evidence, uncontested by Plaintiff, indicating that the decision to place razor wire along the interior fences was a policy decision made in response to the growing problem of contraband in FCI Fort Dix. According to Fort Dix Facilities Manager

Michael Bond, contraband, including cellphones and drugs, was being thrown over the perimeter fences onto Fort Dix FCI property prior to the installation of the razor wire in 2011. Declaration of Michael Bond ("Bond Dec."), Docket Entry 23-9 ¶ 5. Inmates would then cut holes in the interior "slow-down" fences to retrieve the contraband and bring it back into the facility. Bond and other Fort Dix officials came up with the cost-effective solution of placing razor wire along the interior fences to deter inmates from cutting holes in them. *Id.* ¶¶ 6, 10. These officials included the warden at the time, Donna Zickefoose; Hal Sutherland, the Associate Warden; and Janel Fitzgerald, former Captain. *Id.* The officials notified the BOP Northeast Regional Office of their decision to place razor wire along the interior fences once it was made. *Id.* ¶ 9.

The uncontested record before the Court shows that BOP officials used their judgment as to the best way to combat contraband within Fort Dix, a significant policy concern, and that they designed and installed this barrier to address those security needs. The United States has carried its burden of proof in showing the discretionary function exception applies; therefore, the Court lacks jurisdiction over the complaint under the FTCA. The summary judgment motion is granted.

**V. CONCLUSION**

For the reasons stated above, the United States' motion for summary judgment is granted. An appropriate order follows.

**September 10, 2018**          **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                U.S. District Judge